UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS YOLTON, WILBUR
MONTGOMERY, ELSIE TEAS, ROBERT
BETKER, EDWARD MAYNARD, and
GARY HALSTEAD, on behalf of themselves
and a similarly situated class,

       Plaintiffs,                                        Case No. 02-75164

v.                                                              Honorable Patrick J. Duggan

EL PASO TENNESSEE PIPELINE CO., and
CNH AMERICA, LLC,

       Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO EXTEND THE PRELIMINARY INJUNCTION TO INCLUDE POST-OCTOBER 3, 1993 RETIREES

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 17, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

This matter currently is before the Court on Plaintiffs' motion to extend the preliminary injunction entered on December 31, 2003, to include individuals in the certified Class[1] who retired after October 3, 1993, and surviving spouses of those retirees.

---

[1]The Class is defined as:

> All former bargaining unit employees who retired under the Case Corporation (formerly J.I. Case) Pension Plan for Hourly Paid

Plaintiffs filed their motion on September 1, 2007. Defendant El Paso Tennessee Pipeline Company ("El Paso") filed a response on September 25, 2007. This Court held a hearing with respect to Plaintiffs' motion on October 3, 2007. For the reasons that follow, the Court grants Plaintiffs' motion.

**Procedural Background**

Plaintiffs filed this class action lawsuit seeking fully funded, lifetime retiree health care benefits for certain retirees and surviving spouses of those retirees of the Case Corporation ("Case"). Plaintiffs alleged that Defendants breached labor agreements in violation of the Labor Management Relations Act and their fiduciary duties in violation of the Employee Retirement Income Security Act by requiring Plaintiffs to contribute substantial premiums to maintain their health care benefits. Plaintiffs subsequently filed a motion for preliminary injunction, asking the Court to order Defendants to resume paying the full costs of those benefits.

This Court issued an opinion and order on December 31, 2003, granting Plaintiffs' motion for preliminary injunction. *Yolton v. El Paso Tennessee Pipeline Co.*, 318 F. Supp. 2d 455 (E.D. Mich. 2003), *aff'd*, 435 F.3d 571 (6th Cir. 2006). The Court concluded that, except for individuals retiring after October 3, 1993 and their surviving

---

> Employees on or before July 1, 1994 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan) and all surviving spouses of those former bargaining unit employees.

Order Granting Pls.' Mot. for Class Certification. (E.D. Mich. Sept. 3, 2004).

spouses, Plaintiffs likely would prevail in establishing their entitlement to vested retiree health insurance benefits. *Id*. at 471. The Court excluded post-October 3, 1993 retirees and their surviving spouses from its preliminary injunction order because that was the effective date of an Extension Agreement and a "FAS 106" Letter ("1983 Cap Letter") between the UAW and Case and the letter "arguably capped Case's retiree health insurance obligations." *Id*. at 473. As the Court explained: "At this time, the Court is not convinced that the FAS 106 Letter was merely for accounting purposes [as the Plaintiffs argued] and that the UAW and Case therefore did not intend for it to limit Case's obligations to provide future retirees[] health care benefits." *Id*.

Although initially concluding that El Paso was the party liable for the above-cap costs of Plaintiffs' benefits, the Court reconsidered this holding and found that Case– now CNH America, LLC ("CNH America")– is the party primarily liable for those costs. *Yolton v. El Paso Tennessee Pipeline Co.*, 2004 WL 3661450 (E.D. Mich. Mar. 9, 2004). The Court subsequently concluded, however, that El Paso is contractually obligated to indemnify CNH America for the above-cap costs of Plaintiffs' health insurance and ordered El Paso to step into CNH America's shoes and begin paying those costs. *Yolton v. El Paso Tennessee Pipeline Co.*, 2004 WL 3664179 (E.D. Mich. Sept. 3, 2004). El Paso has been complying with the preliminary injunction order since that time, paying the above-cap health insurance costs for individuals in the Class who retired or whose spouses retired prior to October 3, 1993. Post-October 3, 1993 retirees and surviving spouses of those retirees, in comparison, have been paying the increasing costs of their

health insurance coverage out of their own pockets while this case has been pending. (Pls.' Br. in Supp. of Mot. at 5.)

In the meantime, this Court was assigned a companion matter involving individuals and surviving spouses of individuals who retired from Case after July 1, 1994, and their claim to vested, lifetime health insurance benefits: *Reese v. CNH Global NV*, No. 04-70592 (E.D. Mich. filed Feb. 18, 2004). On August 29, 2007, this Court entered summary judgment in favor of the plaintiffs in *Reese*, including individuals who retired while the 1993 Cap Letter or its 1995 replacement (the "1995 Cap Letter") were in effect. *Reese,* 2007 WL 2484989 (E.D. Mich. Aug. 29, 2007). The Court granted summary judgment to the *Reese* plaintiffs, finding "no genuine issue of material fact with respect to whether [they] are entitled to vested retiree health insurance benefits." *Id*., at *9.

In analyzing whether the *Reese* plaintiffs are entitled to vested retiree health insurance benefits, the Court considered the intent of Case and the UAW with respect to the 1993 and 1995 Cap Letters. The Court concluded: "At this stage in the present proceedings– aided by documents obtained by the parties through discovery and the parties' more expansive arguments– the Court now concludes that the 1993 and 1995 Cap Letters *do not* defeat Plaintiffs' claim [to] vested retiree health insurance benefits." 2007 WL 2484989, at *8 (emphasis in original). The Court found that "the language of the 1993 and 1995 Cap Letters does not unambiguously demonstrate Case's and the UAW's intent to impose contribution costs on retirees and their surviving spouses to maintain their health insurance coverage." *Id*. Looking to extrinsic evidence, the Court concluded

that "Case and the UAW in fact did not intend for the cap to ever have a substantive affect [sic] on retirees and their surviving spouses and that the cap was imposed solely for accounting purposes." *Id*.

Plaintiffs filed the pending motion after the Court issued its August 29 opinion and order in *Reese*.

**Preliminary Injunction Standard**

In determining whether to grant a preliminary injunction, a court must consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the injunction. *Yolton*, 318 F. Supp. 2d at 464-65.

"A trial court's power to modify [an injunction], like the power over all its orders, is inherent." *Sierra Club v. United States Army Corp of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). "When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Id*. "The test of that discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction"– i.e., "whether or not the *status quo* is maintained by the injunction." *Id*. at 257. As the Second Circuit explained in *Sierra Club*, as circumstances change, modifications of a preliminary injunction may become necessary: "An injunction is an ambulatory remedy that marches along according to the nature of the proceedings. It is executory and subject to adaption

5

as events may shape the need . . ." *Id*. Thus a district court "is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or law or for any other good reason." *Movie Sys., Inc. v. MAD Minneapolis Distrib.*, 717 F.2d 427, 430 (9th Cir. 1983).

### The Parties' Arguments

Based on the Court's August 29 decision in *Reese*, Plaintiffs argue that the preliminary injunction should be extended to include post-October 3, 1993 retirees and surviving spouses of those retirees. Plaintiffs argue that, in light of the Court's holding, these individuals are not only *likely* to succeed on their claim for vested retiree health care benefits, but are entitled to summary judgment on this claim. With respect to the remaining factors in the Court's preliminary injunction analysis, Plaintiffs note that the Court previously analyzed those factors in its December 31, 2003 opinion and order and that the Sixth Circuit found "the . . . court's conclusions sound." (Pls.' Br. in Supp. of Mot. at 4-5, quoting *Yolton*, 435 F.3d at 584.) To further demonstrate that post-October 3, 1993 retirees and their surviving spouses will suffer irreparable harm if the injunction is not extended to include them, Plaintiffs indicate that those individuals have been paying ever-increasing amounts to maintain their health insurance coverage and that they currently pay $590 per month. Plaintiffs argue: "The irreparable harm forecast in this Court's 12/31/03 Opinion has not been abated. Few retirees living on limited, fixed incomes can afford that monthly cost for long. And, if they can, it is at the expense of their life savings, their sense of retirement security and other of life's necessities." (*Id*. at

5.)

In response, El Paso first argues that Plaintiffs' motion is a disguised motion for reconsideration of the Court's December 31, 2003 injunctive order, pursuant to Eastern District of Michigan Local Rule 7.1(g)(1). El Paso contends that the motion is untimely and otherwise fails to meet the standards for reconsideration under Rule 7.1(g)(1). El Paso argues that the motion therefore should be denied.

El Paso further argues that the motion should be denied because the Court's decision in *Reese* is not dispositive in *Yolton*. More specifically, El Paso maintains that the Court never addressed the enforceability of the 1993 and 1995 Cap Letters in *Reese* and that this issue is critical to deciding the present matter. El Paso explains that the *Reese* defendants did not seek to enforce the terms of the 1993 and 1995 Cap Letters, but only used the letters as evidence that Case and the UAW did not intend to grant retirees vested health insurance benefits in the underlying collective bargaining agreements. El Paso asserts that "[t]he *Reese* defendants in fact could not enforce the Cap Agreement because they had agreed in 1998 negotiations with the UAW to eliminate the caps for post-July 1, 1994 retirees in exchange for replacing the expensive indemnity plan with a managed care program." (El Paso's Resp. Br. at 1.) In comparison, El Paso argues, it and CNH America seek to enforce the Cap Letters in the present matter to require post-October 3, 1993 retirees and surviving spouses of those retirees to pay the above-cap costs of their health insurance benefits. Thus El Paso contends that, until the Court resolves whether the Cap Letters are enforceable, it cannot decide whether Plaintiffs have

7

a right to vested benefits.

## Analysis

First, this Court does not construe Plaintiffs' motion as a motion for reconsideration pursuant to Local Rule 7.1(g)(1). Second, the Court finds El Paso's distinction between the issues in this case and *Yolton* to be a distinction without a difference. In both cases, the primary issue is whether individuals within the defined class are entitled to vested retiree health insurance benefits. Resolution of that issue in both cases depends upon whether Case and the UAW intended to grant retirees and their surviving spouses vested benefits. To demonstrate that they did not, the defendants in both cases rely heavily on the 1993 and 1995 Cap Letters.

El Paso may be correct that the *Reese* defendants did not seek to enforce the Cap Letters. The *Reese* defendants did argue, however, that the letters effectively imposed a cap on Case's future liability for retiree health insurance costs and that this demonstrated Case's and the UAW's intent to not grant retirees vested health insurance benefits. The Court's analysis of the Cap Letters– along with its analysis of the relevant language of the collective bargaining agreements, group insurance benefit plans, and summary plan descriptions– was critical to its evaluation of Case's and the UAW's intent.

In the present matter, Defendants may seek to enforce the Cap Letters and require Plaintiffs to pay the above-cap costs of their health insurance benefits. To do so however, Defendants must demonstrate that, when they executed the 1993 and 1995 Cap Letters, the UAW and Case intended to impose contribution costs on retirees and their surviving

8

spouses. As indicated in the December 31, 2003 injunctive order, the Court must resolve whether the UAW and Case intended the letters to have a substantive impact on retirees and their surviving spouses or whether the letters were for accounting purposes only. The Court clearly resolved this question in *Reese*. While the Court's conclusion may not be binding on the parties in this lawsuit, it clearly indicates to this Court that the post-October 3, 1993 retirees and surviving spouses of those retirees are likely to succeed on their claim to vested retiree health insurance benefits.

The Court addressed the remaining factors relevant to its preliminary injunction analysis in its December 31, 2003 opinion and order. The Court's prior reasoning with respect to those factors applies equally to the decision of whether to extend the preliminary injunction to the post-October 3, 1993 retirees and the Court sees no reason to restate those reasons here. The Sixth Circuit found the Court's reasoning to be sound.

In conclusion, based on an expanded record and the arguments set forth by the parties in *Reese*, the Court finds that an extension of the preliminary injunction to include individuals who retired after October 3, 1993 and their surviving spouses is warranted. Extending the December 31, 2003 preliminary injunction to include these individuals is consistent with the purpose behind the initial injunction– that is, to maintain the status quo while this lawsuit is resolved.

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion to extend the preliminary injunction to include post-October 3, 1993 retirees and the surviving spouses of those retirees is

9

**GRANTED**.

                                            s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
Roger J. McClow, Esq.
Norman C. Ankers, Esq.
Thomas G. Kienbaum, Esq.
Bobby R. Burchfield, Esq.
Kevin S. Hendrick, Esq.