UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS YOLTON, WILBUR
MONTGOMERY, ELSIE TEAS, ROBERT
BETKER, EDWARD MAYNARD, and
GARY HALSTEAD, on behalf of themselves
and a similarly situated class,

       Plaintiffs,                              Case No. 02-75164

v.                                                    Honorable Patrick J. Duggan

EL PASO TENNESSEE PIPELINE CO., and
CNH AMERICA, LLC,

       Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART EL PASO TENNESSEE PIPELINE CO'S MOTION TO STRIKE PLAINTIFFS' CLAIMS FOR EMOTIONAL DISTRESS DAMAGES AND TO STRIKE PLAINTIFFS' JURY DEMAND**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 31, 2008.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

In this lawsuit, a Class of retirees of the Case Corporation ("Case") and surviving spouses of those retirees seek fully funded, lifetime retiree health care benefits. Presently before the Court is El Paso Tennessee Pipeline Co.'s ("El Paso's") request to strike Plaintiffs' claim for emotional distress damages and damages for replacement insurance for those Class members who terminated coverage through El Paso before the preliminary

injunction took effect[1] and Plaintiffs' jury demand. El Paso's motion has been fully briefed and on November 20, 2007, this Court held a motion hearing.

## Whether Plaintiffs' Jury Demand Must be Stricken

In its motion, El Paso argues that Sixth Circuit precedent establishes that Plaintiffs are not entitled to a jury trial. El Paso raises the same arguments in support of its motion that the defendants raised in a companion matter, *Reese v. CNH Global N.V.*, No. 04-70592 (E.D. Mich. filed Feb. 18, 2004). The plaintiffs in *Reese* raised the same arguments in response to the motion in that case that Plaintiffs raise here. The Court agreed with the *Reese* defendants' arguments and struck the plaintiffs' jury demand in an opinion and order issued on August 29, 2007. *See id.*, 8/29/07 Op. and Order Granting Mot. to Strike Jury Demand [Doc. 212]. For the same reasons, the Court grants El Paso's request in this case.

The Sixth Circuit's decisions in *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996), and *Bittinger v Tecumseh Products Co.*, 123 F.3d 877 (6th Cir. 1997), control the outcome of El Paso's motion. In *Golden* and *Bittinger*, the plaintiffs filed ERISA and LMRA claims in response to the defendants' modification of their retiree health insurance benefits. The relief sought by the plaintiffs in those cases is indistinguishable from the relief Plaintiffs seek here. As the *Bittinger* court compared the relief sought in the case

---

[1]The title of El Paso's motion does not reflect its request to strike Plaintiffs' claim for damages for replacement insurance. That request, however, is contained within El Paso's brief. (El Paso's Br. in Supp. of Mot. at 7-8.)

2

before it with that sought in *Golden*:

> The complaint in *Golden*, like the complaint in the instant case, sought some relief couched in the language of damages. For example, the *Golden* plaintiffs sought "damages equal to all costs and expenses sustained by class members . . . as a result of their refusal to provide health care benefits negotiated by Kelsey-Hayes and the UAW. . . ." . . . Similarly, the instant plaintiffs seek "damages in the form of loss of benefits, the cost of premiums incurred under the unilaterally amended Insurance Plan, expenses incurred in purchasing private coverage, and/or the costs incurred of uninsured medical bills."

*Bittinger*, 123 F.3d at 883 (quoting *Golden*, 73 F.3d at 661). The Sixth Circuit concluded in both cases that the type of relief the plaintiffs sought was equitable in nature and, therefore, the plaintiffs were not entitled to a jury trial. *Bittinger*, 123 F.3d at 883; *Golden*, 73 F.3d at 659-63.

Plaintiffs argue that the Sixth Circuit's holdings in *Bittinger* and *Golden* did not survive the Supreme Court's decision in *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002). As this Court concluded in *Reese*, the Supreme Court's decision in *Knudson* did not affect the binding impact of the Sixth Circuit's decisions. The *Knudson* Court did not address whether the plaintiff had a Seventh Amendment right to a jury trial. The issue in *Knudson* was whether a suit to seek specific performance of a reimbursement provision in an ERISA plan and to compel the plan beneficiary who had recovered from a third-party to make restitution to the plan constituted a suit in equity or at law. Moreover, the ERISA provision the *Knudson* Court evaluated was Section 502(a)(3), not Section 501(a)(1)(B) which is the basis for Plaintiffs' ERISA claim.

3

The Court therefore grants El Paso's motion to strike Plaintiffs' jury demand.

**Whether Plaintiffs' Demand for Emotional Distress Damages Must be Stricken**

This Court previously struck Plaintiffs' claim for mental distress and anguish damages under ERISA.[2]  (6/5/03 Order [Doc. 26].)  El Paso now asks the Court to strike Plaintiffs' emotional distress damages under Section 301 of the LMRA as well.[3]  El Paso argues that emotional distress damages are not available under the LMRA.  Alternatively, El Paso argues that Plaintiffs' claim should be stricken because Plaintiffs did not list such damages in their Answers to El Paso's Interrogatories.

In support of their position that emotional distress damages are available under Section 301 of the LMRA, Plaintiffs rely on Judge Enslen's decision in *UAW v. Federal Forge, Inc.*, 583 F. Supp. 1350 (W.D. Mich. 1984).  In *Federal Forge*, Judge Enslen found "two principal instances" in which emotional distress damages may be awarded in a breach of contract action:

> The first is when a plaintiff properly pleads a claim of tortious injury independent of the breach of contract claim. . . . The

---

[2]Despite the Court's previous ruling, El Paso still argues in its current motion that emotional distress damages are not recoverable under ERISA.  As the Court resolved that issue previously in this case, it finds no reason to readdress it now.

[3]Case (now CNH) also previously moved to strike Plaintiffs' claim for emotional damages under the LMRA.  While the Court denied Case's motion, it expressly did so without prejudice and indicated that it "ma[de] no ruling at this time as to whether or not Plaintiffs may recover damages for mental distress and anguish in relation to their LMRA claim."  (6/5/03 Order at 3 n.2.)  Therefore, contrary to Plaintiffs' assertion, El Paso's current request is not an improper motion for reconsideration of this Court's June 5, 2003 decision.

> second is when the contract, by its nature, so plainly involves the emotions of the plaintiff that liability for mental distress was or could have been within the contemplation of the breaching party when the contract was executed.

583 F. Supp. at 1355 (internal citations omitted). The second instance was explained by the Michigan Supreme Court in *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957).

In *Stewart*, the Michigan Supreme Court allowed mental distress damages for a physician's breach of a contract to perform a Caesarean section which resulted in a stillborn baby. The *Stewart* Court reasoned:

> When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. . . .

349 Mich. at 469, 84 N.W.2d at 823. The Court reasoned that a physician's contract to perform a Caesarian section is not a commercial contract in which pecuniary interests are most important. Rather, it is like "[s]ome [contracts that] involve rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal." *Id*. Where such contracts are breached, the *Stewart* Court held, "the award of damages for mental distress and suffering is a commonplace, even in actions *ex contractu*." *Id*.

The Michigan Supreme Court subsequently held that the instance described in

*Stewart* where emotional distress damages may be requested was not applicable in a breach of contract action involving the defendant's failure to pay insurance disability benefits. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980). The *Kewin* Court concluded that a disability protection insurance policy contract is purely a commercial contract, the breach of which does not give rise to a right to recover mental distress damages. *Id*. at 416, 295 N.W.2d at 53. The Court reasoned:

> Insurance contracts for disability income protection do not come within the reach of *Stewart*. Such contracts are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event, . . . The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. We recognize that breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation. But recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties.

*Id*. at 416-17, 295 N.W.2d at 53-54.

In addition to relying on the above cases, Judge Enslen in *Federal Forge* also cited *Fisher v. General Telephone Company of the Northwest, Inc.*, 510 F. Supp. 347 (E.D. Mich. 1980). In *Fisher*, relying on *Kewin*, the court held that damages for mental distress may not be recovered for breach of an employment agreement.

While not necessarily bound to follow Michigan law, the Court agrees with the reasoning of the Michigan Supreme Court in *Kewin* that damages for emotional distress are not recoverable in a breach of contract case unless "they were within the contemplation of the parties at the time the contract was made." *Kewin*, 409 Mich. at

6

417, 295 N.W.2d at 54. The Court disagrees with Judge Enslen's conclusion in *Federal Forge*, however, that contracts to pay retiree benefits deal "with matters obviously of mental concern and solicitude" and that these "matters of mental concern and solicitude were within the contemplation of the parties when executing [collective bargaining agreements]." 583 F. Supp. at 1356. It is certainly reasonable to conclude that in any breach of contract case the party who is to receive payment may suffer some adverse emotional consequences if the payment is not made as promised. It is not unreasonable to conclude that the failure to receive the payment may present some degree of "anxiety," depending most likely on the creditor's need for the money. However, this Court does not believe that the fact that nonpayment may possibly cause some "hardship" and thus some "concern" on the part of the creditor will obligate the breaching party to pay damages for emotional distress in a breach of contract case unless an exceptional situation exists such as in *Stewart*.

The Sixth Circuit had occasion to address this issue in *International Union UAW Local 91 v. Park-Ohio Industries, Inc.*, Nos. 88-3145, 88-3147, 1989 WL 63871 (1989) (unpublished opinion). *Park-Ohio*, like the present case, involved the termination of health insurance benefits to former employees. In affirming the district court's refusal to allow mental distress damages, the Sixth Circuit stated: "It is apparent that the district court applied a standard that is consistent with the guiding principles in this context, that mental distress damages are available in breach of contract actions only if serious emotional harm was a particular likely result." *Id*., at *8 (citation omitted). The court

7

concluded that emotional harm was not particularly likely under the circumstances presented. As the circumstances presented in *Park-Ohio* are the same as those presented here, the Court will follow the Sixth Circuit's decision in *Park-Ohio* and concludes that Plaintiffs are not entitled to emotional distress damages under ERISA or the LMRA. The Court therefore grants El Paso's motion to strike Plaintiffs' claim for these damages.

### Whether Plaintiffs' Claim for Damages for Replacement Insurance Coverage Should be Stricken

Plaintiffs seek recovery from Defendants for the following:

> For those class members who terminated coverage through El Paso prior to April 15, 2004, when the preliminary injunction took effect, the damages include the costs of health care, prescription, drug, dental, vision and hearing aid expenses and premiums, deductibles, copayments under insurance plans for such coverages that they would not have had to incurred [sic] if El Paso had maintained the contractual plan at no cost.

(El Paso's Mot., Ex. A at 13.) Defendants argue that such damages are not recoverable under ERISA and that allowing Plaintiffs to recover these damages under the LMRA would circumvent ERISA's damages scheme. Defendants alternatively argue that continuing class certification mandates that this Court strike Plaintiffs' claim for damages for replacement insurance coverage.

As an initial matter, this Court finds no indication that Congress intended to limit a Plaintiffs' recovery under the LMRA when it enacted ERISA. While ERISA expressly preempts certain state laws, the statute also expressly provides that it does not impact, in any way, any federal law:

8

> (d) **Alteration, amendment, modification, invalidation, impairment or supersedure of any law of the United States Prohibited**
>
> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede *any* law of the United States (except as provided in sections 1031 and 1137(c) [which are inapplicable here] or any rule or regulation issue under any such law.

29 U.S.C. § 1144(d). Thus this Court does not conclude that ERISA's remedial scheme is the sole source of recovery in a hybrid ERISA/LMRA action.

Under the LMRA, the purpose of any award "'is to make employees whole for the losses suffered.'" *UAW Local 540 v. Baretz*, 159 F. Supp. 2d 968, 972 (E.D. Mich. 2001) (quoting *Aguinoga v. United Food and Commercial Workers Int'l Union*, 720 F. Supp. 862, 870 (D. Kan. 1989)). Thus, courts should fashion remedies for an LMRA violation that place the plaintiffs in the position they would have attained had the agreement been performed. *Id*. at 973. "'[T]he general rule in breach of contract cases is that the defendant is liable for all damages resulting from the breach that could have been reasonably and fairly contemplated by the parties at the time of execution.'" *Id*. (quoting *Int'l Bhd. of Elec. Workers v. A-1 Elec. Servs., Inc.*, 535 F.2d 1, 4 (10th Cir. 1979)). To accomplish this purpose, the district courts in *Baretz* and *Aguinaga* awarded the plaintiffs compensation for the loss of their medical benefits if they purchased substitute insurance coverage or incurred out-of-pocket expenses which would have been reimbursed under the collective bargaining agreement.

Following the above decisions, this Court holds that Plaintiffs may seek

9

reimbursement for the costs of substitute insurance coverage and the out-of-pocket expenses they incurred which otherwise would have been covered had there not been a breach of the relevant labor agreements. Any other result would be inequitable, as an employer could terminate retiree health insurance coverage and completely avoid paying the costs of that coverage for the months or even years that it takes to litigate whether the retirees are entitled to have their coverage reinstated.

El Paso also asserts, however, that continuing class certification mandates the Court's dismissal of Plaintiffs' claim for damages for replacement insurance coverage and out-of-pocket expenses incurred because they lost their coverage through El Paso. El Paso contends that continuing class certification would be inappropriate because the determination of whether Plaintiffs are entitled to these damages is dependent significantly on the intangible, subjective differences of each class member's circumstances. It is common in class actions, however, for class members to have suffered varying amounts of losses and different kinds of injuries as a result of the defendant's common act toward class members that makes class certification appropriate. *Bittinger*, 123 F.3d at 885. As the Sixth Circuit indicated in *Bittinger*, differences in damages suffered among class members "can be dealt with through other methods other than denial of class certification, at a later stage in the proceedings." *Id*.

The Court therefore denies El Paso's motion to strike Plaintiffs' claim for damages for replacement insurance coverage and out-of-pocket expenses that they would not have had to incur if El Paso had maintained the contractual plan at no cost to them.

**Conclusion**

In summary, the Court grants El Paso's motion to strike Plaintiffs' jury demand. The Court also grants El Paso's motion to strike Plaintiffs' claim for emotional distress damages under the LMRA. With respect to Plaintiffs' demand for damages for replacement coverage and out-of-pocket expenses, the Court concludes that such damages, although not recoverable under ERISA, are recoverable under the LMRA. The Court therefore denies El Paso's motion to strike Plaintiffs' claim for those damages.

**SO ORDERED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Roger J. McClow, Esq.
Samuel C. McKnight, Esq.
Norman C. Ankers, Esq.
Thomas G. Kienbaum, Esq
William B. Forrest, Esq..
Bobby R. Burchfield, Esq.
Kevin S. Hendrick, Esq.