UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS YOLTON, WILBUR MONTGOMERY,
ELSIE TEAS, ROBERT BETKER, MARY
MAYNARD, and GARY HALSTEAD, on behalf
of themselves and a similarly situated class,

                        Plaintiffs,

v.

EL PASO TENNESSEE PIPELINE CO., and
CNH AMERICA, LLC,

                        Defendants.

_____/

Case No. 02-CV-75164

Hon. Patrick J. Duggan
Magistrate Judge Donald Scheer

**PLAINTIFFS' AND DEFENDANT EL PASO TENNESEE PIPELINE CO.'S
JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs Wilbur Montgomery, Elsie Teas, Robert Betker, Mary Maynard and Gary Halsted ("Plaintiffs" or "Class Representatives") and Defendant El Paso Tennessee Pipeline Company ("El Paso Tennessee"), by their undersigned counsel, jointly move for preliminary approval of their Settlement Agreement. In support of their motion, Plaintiffs and El Paso Tennessee state as follows:

1.      On December 23, 2002, Plaintiffs, for themselves and on behalf of a class of Case Corporation retirees and surviving spouses ("Class Members"), sued El Paso Tennessee and Case Corporation in this Court. Plaintiffs sought a declaratory judgment that El Paso Tennessee and Case Corporation (now CNH America, LLC) were required to provide the Class Members with lifetime health insurance benefits. Plaintiffs also sought monetary damages and injunctive relief. Plaintiffs asserted that El Paso Tennessee's requirement that Class Members, beginning in September 2002, pay premium contributions to maintain their health insurance benefits had: (1) breached the applicable collective bargaining agreements between Case Corporation and the UAW; and (2) violated and Employee Retirement Income Security Act ("ERISA"). (R.1).

2.      El Paso Tennessee and CNH America denied that they had breached the collective bargaining agreements or violated ERISA and asserted certain affirmative defenses.

3.      On December 31, 2003, this Court issued a preliminary injunction requiring El Paso Tennessee to pay the full cost of the health insurance benefits for Class Members. (R.80). On March 9, 2004, this Court modified the preliminary injunction, ruling that CNH America was responsible for paying those costs. (R.102)

4.      On September 3, 2004, this Court ruled that this litigation would proceed and be maintained as a class action pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. (R.145)

1

5.      On September 3, 2004, this Court granted CNH America's motion for summary judgment on its cross claim against El Paso and ordered El Paso to indemnify CNH America for CNH America's future payments pursuant to the March 8, 2004 Amended Order. (R. 144).

6.      On January 17, 2006, the United States Court of Appeals for the Sixth Circuit affirmed this Court's issuance of the preliminary injunction and affirmed this Court's judgment in favor of CNH America on its indemnity claim.

7.      On March 7, 2008, this Court granted Plaintiffs' motion for summary judgment, holding that CNH America was obligated to provide lifetime health insurance benefits for Class Members.  This Court further held that El Paso Tennessee was liable to Plaintiffs because El Paso had assumed CNH America's obligations under the Reorganization and Allocation Agreement to provide benefits to retirees who retired on or before July 1, 1994. (R.380).  This Court's summary judgment order did not address damages and thus remains subject to appeal by El Paso Tennessee and CNH America.

8.      During the process of this litigation, counsel for El Paso Tennessee, CNH America, and the Class Representatives conducted an extensive investigation of the facts and the law.  The Class Representatives and Class Counsel have concluded that, under the circumstances and given that further appeals will take time and that final success is not guaranteed, the proposed Settlement Agreement is fair to and in the best interests of the Class Members.  This proposed Settlement Agreement is attached as Exhibit 1 to the Brief in Support of this Motion.

9.      El Paso Tennessee and Plaintiffs now seek this Court's preliminary approval of the Settlement Agreement and entry of a proposed Order of Preliminary Approval, which is attached as Exhibit H to the Settlement Agreement.  That Order would stay further proceedings, require Class Counsel to provide Court approved notice of the proposed settlement to the Class

Members, and establish a hearing date for final approval of the Settlement Agreement.

10.     Following the hearing on final approval of the Settlement Agreement, if the Court determines that the Agreement is in the best interests of the Class Members, the parties will ask the Court to enter a Final Judgment and Order of Dismissal in the form attached to the Settlement Agreement as Exhibit E.

11.     The terms of the Settlement Agreement, reached after extensive, good-faith negotiations, are summarized in the corresponding Brief in Support of this Motion.

WHEREFORE, El Paso Tennessee and Plaintiffs respectfully request that this Honorable Court enter the Order of Preliminary Approval.

Respectfully submitted,

KLIMIST, McKNIGHT, SALE, McCLOW        KIENBAUM OPPERWALL HARDY
   & CANZANO                                          & PELTON, P.L.C.

By: s/*Roger J. McClow*                          By: s/ *William B. Forrest III*
     Roger J. McClow (P27170)                       Thomas G. Kienbaum (P15945)
Attorneys for Plaintiffs                            William B. Forrest III (P60311)
400 Galleria Officentre, Suite 117              Attorneys for Defendant El Paso
Southfield, MI 48034-8460                        280 North Old Woodward, Ste. 400
(248) 354-9650                                      Birmingham, Michigan 48009
rmcclow@kmsmc.com                              (248) 645-0000
                                                    wforrest@kohp.com

Dated:  August 12, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS YOLTON, WILBUR MONTGOMERY,
ELSIE TEAS, ROBERT BETKER, MARY
MAYNARD, and GARY HALSTEAD, on behalf
of themselves and a similarly situated class,

                Plaintiffs,

v.

EL PASO TENNESSEE PIPELINE CO., and
CNH AMERICA, LLC,

                Defendants.

_____/

Case No. 02-CV-75164

Hon. Patrick J. Duggan
Magistrate Judge Donald Scheer

**BRIEF IN SUPPORT OF PLAINTIFFS' AND DEFENDANT EL PASO TENNESEE
PIPELINE CO.'S JOINT MOTION FOR PRELIMINARY APPROVAL OF
<u>SETTLEMENT AGREEMENT</u>**

**STATEMENT OF QUESTION PRESENTED**

Plaintiffs and El Paso Tennessee have, after extensive and good-faith negotiations, reached a Settlement Agreement that is fair, reasonable, and adequate.  Should this Court issue an Order of Preliminary Approval with respect to that Settlement Agreement?

Plaintiffs and El Paso Tennessee answer "Yes."

## CONTROLLING AUTHORITIES

**Cases:**

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990)

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)

*In re Washington Public Power*, 720 F. Supp. 1379 (D. Ariz. 1989)

**Statutes:**

Labor Management Relations Act, 29 U.S.C. §185

Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq*.

**Federal Rules of Civil Procedure:**

Fed.R.Civ.P. 23(a)

# I.   INTRODUCTION

After extensive negotiations between their counsel, Plaintiffs Wilbur Montgomery, Elsie Teas, Robert Betker, Mary Maynard and Gary Halsted ("Plaintiffs" or "Class Representatives"), and Defendant El Paso Tennessee Pipeline Company ("El Paso Tennessee"), entered a Settlement Agreement that, if approved by this Court, will resolve this litigation after nearly nine years.  Under the terms of the Settlement Agreement, El Paso Tennessee will provide Class Members with modern and comprehensive health insurance benefit coverage for their lifetimes and will reimburse Class Members for a substantial amount of the premium contributions they paid to El Paso Tennessee to maintain their medical coverage (and their out-of-pocket expenses for alternate coverage) prior to this Court's issuance of the preliminary injunction.  Once the Settlement Agreement receives final approval, El Paso Tennessee's obligations under the Settlement Agreement will be guaranteed by El Paso Corporation, providing Class Members with additional security for their health insurance benefits.

The Settlement Agreement is a fair, reasonable, and adequate resolution of this litigation. Accordingly, Plaintiffs and El Paso Tennessee request that this Court enter an order preliminarily approving the Settlement Agreement.

# II.   SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT

For purposes of the Settlement Agreement, Class Members will consist of the following persons:

> All former bargaining unit employees who retired under the Case Corporation (formerly J.I. Case) Pension Plan for Hourly Paid Employees on or before July 1, 1994 (other than former employees eligible for or receiving retirement benefits under the deferred vested provisions of the Pension Plan) and all surviving spouses who are (1) spouses of former bargaining unit employees who retired or died on or before July 1, 1994; and (2) eligible for or receiving surviving spouse benefits under the Case Corporation (formerly J.I. Case) Pension Plan for Hourly Paid Employees, other than a deferred vested pension.

1

The Settlement Agreement provides for entry of a Final Judgment and Order of Dismissal that will settle all claims of the Class Members and anyone claiming on behalf of or through a Class Member (including but not limited to any spouse, Surviving Spouse, beneficiary, or dependent of a Class Member).  The Settlement Agreement is subject to preliminary and final approval by this Court.

The parties intend for the Settlement Agreement to be incorporated into an enforceable Judgment.  The parties agree that in exchange, all of the claims of the Class Members and anyone claiming on behalf of or through a Class Member in the Litigation are to be dismissed with prejudice.

### A.    Health Care Benefits Under the Proposed Settlement Agreement

El Paso Tennessee will provide a comprehensive Managed Care Plan for Class Members who are not Medicare-eligible.  The Managed Care Plan provides a full range of hospital, surgical and medical services through a network of health care providers.  Blue Cross Blue Shield of Texas will administer the Managed Care Plan.

For in-network services, the Managed Care Plan will pay 100% of the cost of health care services, with a $10.00 co-pay for such things as doctor's office visits.  For network services, there is no deductible, no co-insurance and no lifetime maximum benefit.

For out-of-network services, the Managed Care Plan pays 90% of the reasonable and customary cost of services after an annual deductible of $100.00 per person.  Once a covered individual has paid a total of $600.00 per year (including the deductible), non-network services are paid at 100% of the reasonable and customary charge.

If a Class Member lives outside the network, all services will be paid as if they were network services.

For Medicare-eligible Class Members, El Paso Tennessee will provide the Medicare Supplement Plan L. The Medicare Supplement Plan L will pay 75% of the annual Medicare Part A deductible and 75% of the 20% co-payment that Medicare Part B does not pay for services like doctors' visits. The Medicare Supplement Plan L also provides an additional 365 lifetime days of hospital coverage beyond what Medicare provides. The Medicare Supplement Plan L does not pay any part of the Medicare Part B deductible ($162.00 in 2011), but there is an out-of-pocket maximum. For 2011, after a participant has paid $2,320 for the year in out-of-pocket expenses, the Medicare Supplement Plan L pays 100% of all covered expenses. El Paso Tennessee will provide the Medicare Supplement Plan L through AARP.

The current Indemnity Plan, which includes several very unfavorable limitations for retirees, will be eliminated. For example, the Indemnity Plan includes: (1) a lifetime maximum benefit of $25,000 for Type B services for any one illness and for organ transplants; (2) a 20% co-insurance payment for all Type C expenses such as doctors' visits and expensive outpatient tests such as MRIs and CT Scans, without any annual maximum limit on out-of-pocket expenses; and (3) a $50,000 lifetime maximum benefit for Type C services (meaning that once the Indemnity Plan had paid $50,000 in Type C expenses for any person, there was no longer any coverage for Type C services for the remainder of the participant's life). The Settlement Plans do not include these limitations.

The Prescription Drug Plan will have co-pays of $5.00 for generic drugs; $10.00 for brand name formulary drugs; and $15.00 for non-formulary brand name drugs for a 30-day retail supply. For a 90-day supply of mail order drugs, the co-pays will be $10.00; $20.00; and $30.00. Class Members will be required to use generic drugs where available and purchase maintenance drugs through mail order (after three months of retail purchases).

El Paso Tennessee will continue to provide Dental, Vision and Hearing Aid Benefits. The levels of these benefits will be increased from current levels.  For example, the annual maximum payment for certain types of dental expenses will be increased by $200.00, from $1,400.00 to $1,600.00 per person per year; certain vision expense benefits will be increased by 10%; and the maximum benefit for hearing aids will be increased from $303.20 to $350.00 per ear.

El Paso Tennessee will maintain Health Care Benefits, as modified by the Settlement Agreement, for the lifetime of all Class Members.

El Paso Tennessee will maintain current Life Insurance Benefits for the lifetime of all Retirees.

El Paso Tennessee will pay the full premium cost of these Health Care Benefit and Life Insurance plans.

Full details of all of the Health Care Benefit plans are contained in the Summary Plan Description, a copy of which is Exhibit K to the Settlement Agreement.

### B.    Authorized Claim Procedure

The Settlement Agreement provides that El Paso Tennessee will reimburse eligible Class Members for a portion of the Premium Contributions and certain other expenses, including substitute insurance and out-of-pocket health care and prescription drug expenses, incurred as a result of El Paso Tennessee's requirement that, beginning September 1, 2002, Class Members pay Premium Contributions to maintain their Health Care Benefits.  The amounts reimbursed under the Settlement Agreement are called the Authorized Claim Amounts.

For Pre-October 3, 1993 Class Members (those who were covered by the Preliminary Injunction when it first became effective on March 15, 2004), El Paso Tennessee will pay 70%

of the Premium Contributions and 70% of other properly documented out-of-pocket health care expenses those Class Members incurred for the period September 1, 2002 through March 15, 2004.

For Post-October 3, 1993 Class Members (those who were not covered by the Preliminary Injunction until October 17, 2007), El Paso Tennessee will pay 75% of the Premium Contributions and 75% of other properly documented health care expenses those Class Members incurred for the period September 1, 2002 through October 17, 2007.

Authorized Claim Amounts will be determined pursuant to an Authorized Claims Procedure, which is Exhibit A to the Settlement Agreement.  All Class Members will be provided a written Notice of Opportunity to File Damage Claim, and a Damage Claim Form that will show the Premium Contribution amount that each Class Member paid to El Paso Tennessee, according to records supplied by El Paso Tennessee.  Class Members who terminated coverage with El Paso Tennessee before the Preliminary Injunction became effective as to them will be required to document any expenses they incurred for substitute insurance premiums and health care and prescription drug expenses that would have been paid by the Indemnity Plan.

### C.    Early Authorized Claim Amount Payment

Under the Settlement Agreement, Class Members must wait until the conclusion of the Authorized Claim Procedure to receive payment of their Authorized Claim Amount.  This process may take a year or longer to complete.  But a Class Member who: (1) agrees that the Premium Contribution amount shown on the Damage Claim Form is correct; (2) does not seek additional damages for the cost of substitute insurance and for out-of-pocket health care expenses and prescription drug expenses; and (3) signs a Release and timely returns the Release to Class Counsel will be eligible for an early Authorized Claim Amount payment from El Paso

Tennessee.

**D.      El Paso Tennessee's Obligation Under The Settlement Agreement**

El Paso Tennessee will pay the Authorized Claim Amount and will continue to pay the entire premium cost for all Health Care Benefits.  El Paso Tennessee will provide these programs for the lifetime of the Class Members.  The Judgment will require that El Paso Tennessee comply with its obligations under the Settlement Agreement.

Once the Settlement Agreement receives final approval, El Paso Corporation, the parent company of El Paso Tennessee, will sign a Guaranty that will require El Paso Corporation to guaranty all of El Paso Tennessee's obligations under the Settlement Agreement.

El Paso Tennessee will also pay Class Counsel an amount of $4 million in attorney fees and costs for services rendered through the date the Authorized Claim Amount checks are distributed.  These costs and fees are subject to approval by the Court.

**E.      Settlement Of All Class Member Claims And Dismissal Of The Litigation**

The Settlement Agreement settles all claims of the Class Members and anyone claiming on behalf of or through a Class Member (including but not limited to any spouse, Surviving Spouse, beneficiary, or dependent of a Class Member).  If the Settlement Agreement is approved, Class Members will only have claims for Health Care Benefits that arise under the Settlement Agreement.  All claims for Health Care Benefits that do not arise under the Settlement Agreement will be dismissed with prejudice in the Judgment.

**III.     THE LEGAL STANDARD GOVERNING APPROVAL
OF CLASS ACTION SETTLEMENTS**

**A.      The Legal Standard**

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the Court . . . ."  The law encourages

settlement of legal disputes. *Prandani v. National Tea Co.*, 557 F.2d 1015, 1021 (2d Cir. 1977). When requested to grant final approval of a class action settlement, a court has a duty to ensure that the proposed settlement is "fair, reasonable, and adequate." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *In re Warner Communications Securities Litigation*, 798 F.2d 35, 37 (2d Cir. 1986); *Detroit Police Officers Assoc. v. Young*, 920 F. Supp. 755, 761 (E.D. Mich. 1995).  The Court should also inquire as to whether the proposed settlement is consistent with the public interest.  *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d at 42; *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d at 351; *Williams v. Vukovich*, 720 F.2d at 921; *Kellogg v. Shoemaker*, 927 F. Supp. 244, 245 (S.D. Ohio 1996).

The Court must ensure that Class Members' interests have been adequately represented. When assessing a settlement's fairness, reasonableness and adequacy, the Court should consider the following factors:

1.    The complexity, expense and likely duration of the litigation;

2.    The reaction of the class to the settlement;

3.    The stage of the proceedings and the amount of discovery completed;

4.    The risks of establishing liability;

5.    The risks of establishing damages;

6.    The risks of maintaining the class action through trial;

7.    The ability of the defendants to withstand a greater judgment;

8.    The range of reasonableness of the settlement fund in light of the best possible recovery; and

7

9.  The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

See, *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d at 1205, *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *Schaefer v. Tannian*, 1995 U.S. Dist. Lexis 11816 (E.D. Mich. 1995), adopted, 895 F. Supp. 746 (1995), and *Detroit Police Officers Assoc. v. Young*, 920 F.Supp. at 761.

In addition, the Court must ensure that the settlement is the product of good faith, arm's length negotiations and that there has been no fraud, overreaching or collusion on the part of the negotiating parties. *Williams v. Vukovich*, 720 F.2d at 923; *In re Ivan F. Boesky Securities Litigation*, 948 F.2d 1358 (2d Cir. 1991); *In re Warner*, 798 F.2d at 37.

**B.  Application of the Standards for Final Approval of the Settlement Agreement**

While "[t]here is a strong initial presumption that the compromise is fair and reasonable," *In re Saxon Securities Litigation*, [1985-86] Fed. Sec. L. Rep. (CCH) ¶ 92.414 at 92.525 (S.D.N.Y. 1985), the Court must nevertheless analyze the settlement in light of the governing standards outlined above. Therefore, Plaintiffs and El Paso Tennessee will address how the proposed Settlement Agreement satisfies each of those standards.

**1.  Complexity, Expense, and Likely Duration of Further Litigation**

This litigation involves complicated legal and factual issues. The principal dispute between the parties is whether El Paso Tennessee has an obligation to provide a specified package of Health Care Benefits for the life of the bargaining unit retirees and eligible surviving spouses.

Relevant factual questions in this litigation focus on several collective bargaining agreements ("CBAs") between Case Corporation and the UAW, and the collective bargaining

8

negotiations for those CBAs over a period of many years. Additional factual issues involve Memoranda of Understanding ("MOUs") under those and other CBAs, bargaining history, course of conduct and other extrinsic evidence. Damage issues include the degree to which the level of benefits were reduced by the changes imposed by El Paso Tennessee beginning in 2002, individual damages for out-of-pocket expenses resulting from the changes, interest, and attorney's fees.

The key legal issues involving the vesting of retiree health care benefits arise under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 and under ERISA, 29 U.S.C. §1001 *et seq.* These various issues are the subjects of several holdings by the Sixth Circuit. In addition to the Sixth Circuit decision affirming this Court's issuance of the preliminary injunction in this case, see, *e.g., Maurer v. Joy Technology*, 212 F.3d 907 (6th Cir. 2000), *UAW v. BVR Liquidating Co.,* 190 F.3d 768 (6th Cir. 1999), *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996), *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991), and *UAW v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983).

The contested nature of the legal and evidentiary issues make an appeal from this Court's ruling a virtual certainty absent settlement. If the case is appealed, years could pass before the ultimate resolution of this litigation.

The Settlement Agreement will guarantee that all Class Members will have Health Care Benefits at no annual premium cost for life. For Pre-October 3, 1993 Class Members, El Paso Tennessee will pay 70% of the Premium Contributions and 70% of other properly documented out-of-pocket health care expenses those Class Members incurred for the period September 1, 2002 through March 15, 2004 (when the preliminary injunction became effective for Pre-October 3, 1993 Class Members). For Post-October 3, 1993 Class Members, El Paso Tennessee

9

will pay 75% of the Premium Contributions and 75% of other properly documented health care expenses those Class Members incurred for the period September 1, 2002 through October 17, 2007 (when the preliminary injunction became effective for Post-October 3, 1993 Class Members).

Given that the vast majority of Class Members are over age 65, the passage of time threatens to deprive them of benefits even in the event that they were ultimately fully successful. Thus, the complexity and expected duration of the litigation weigh strongly in favor of approval of the proposed Settlement Agreement.

### 2.   Reaction of the Class to the Settlement

The reaction of the Class to the proposed Settlement Agreement cannot be determined until the Court grants preliminary approval and orders that the proposed notice be sent to Class Members, informing them of the proposed Settlement Agreement, their rights to object and to attend a fairness hearing. But because, under the Settlement Agreement, El Paso will provide a modern and comprehensive health insurance benefit package, as well as reimbursement for up to 75% of out-of -pocket expenses, it is unlikely that there will be any significant opposition to the Settlement Agreement.

### 3.   The Stage of Proceedings and Extent of Discovery

The relevance of this factor is to allow the parties to accurately assess their chances at trial in order to objectively view the value of settlement. *Williams v. Vukovich*, 720 F.2d at 922-23; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971); *Anderson v. The Torrington Co.*, 755 F. Supp. 834, 846-47 (N.D. Ind. 1991). Here, the parties have engaged in extensive discovery. The parties are knowledgeable about the underlying facts, having had

access to the bargaining history of Case Corporation and the UAW, bargaining minutes and notes, the relevant CBAs and MOUs, summary plan descriptions, correspondence, and other extrinsic evidence.

### 4-6.     The Risks of Litigation.

The Class Representatives firmly believe in the strength of their case.  They objectively believe that they would prevail on any appeal by El Paso Tennessee or CNH America.  El Paso Tennessee just as firmly believes the exact opposite.  There are many factual and legal issues which create risks for both sides.  Rather than risk getting nothing, the Class Representatives desire to obtain the very real benefits of the settlement as quickly as possible.  On the other hand, El Paso Tennessee is willing to pay substantial sums of money, for reimbursement and continuing health care benefits for the lives of the Class Members, rather than risk an adverse judgment and the cost of appeals.  As noted in *In re Washington Public Power*, "the essence of settlement is compromise."  720 F. Supp. 1379, 1387 (D. Ariz. 1989).

### 7.     Defendant's Ability to Withstand a Greater Judgment

If the Settlement Agreement receives final judicial approval, El Paso Corporation will guarantee El Paso Tennessee's obligations under the Settlement Agreement.  This provides the Class Members with additional security that they will enjoy health insurance benefits for the duration of their lives.  This added security would not exist if the lawsuit were pursued to final judgment against only El Paso Tennessee.

### 8-9.     The Range of Reasonableness of the Settlement

Although the Class Representatives believe that the Settlement Agreement is fair, adequate, and reasonable, in view of the certainty it provides to Class Members without further litigation, its terms cannot be viewed in isolation.  It "must be considered in the proper context --

that of probable recovery, even assuming a finding of liability in Plaintiff's favor." *In re Washington Public Power*, 720 F. Supp. at 1391. Thus, the Court must weigh the settlement against both the likelihood of a judgment adverse to Plaintiffs and, even assuming a favorable judgment and a favorable appeal, against the range of recoverable damages.

Under the circumstances, the proposed Settlement Agreement is certainly fair, reasonable, and in the best interests of the Class. It provides reimbursement for substantial health care expenses under the Authorized Claim Procedure. It provides for the continuation of comprehensive health care and prescription drug benefits with a commitment that those benefits will be provided for the lifetime of the Class Members at no premium cost. And it eliminates the unfavorable limitations of the current Indemnity Plan, including the lifetime maximum benefit of $25,000 for Type B services for any one illness and for organ transplants, the 20% co-insurance payment for all Type C expenses without any annual maximum limit on out-of-pocket expenses, and the $50,000 lifetime maximum benefit for Type C services

One relevant factor employed by courts when considering final approval of class action settlements is the plaintiffs' need for immediate relief. See, *e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 450 (N.D. Cal. 1988). Here, where many of the Class Members are elderly and/or ill individuals who need medical care, the certainty of substantial reimbursement for health care expenses already incurred and full payment of annual health care premiums going forward, provides strong support for granting approval of the settlement.

### C.    The Experience and Views of Counsel

Class Counsel, based on their combined experience in handling complex class action retiree health insurance cases similar to this case, believe that, under all the circumstances, the settlement is fair, reasonable, and adequate. The views of experienced counsel should be given

great weight by the Court. *Williams v. Vukovich*, 720 F.2d at 922-23; *Weinburger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). When, as here, there is a total absence of any collusion, this factor points strongly in favor of granting final approval.

### D. The Settlement is the Product of Good Faith, Arm's Length Negotiations and is Free from Fraud, Overreaching and Collusion

As the preceding discussion of the final approval factors demonstrates, the settlement is fair, reasonable, and adequate to the Class. That, in turn, is a direct result of the lengthy good-faith, arm's length, collusion-free negotiations leading to the settlement. The settlement negotiations addressed and resolved many difficult issues that were a prerequisite to settlement. This is an additional reason why the Court should be comfortable in granting preliminary approval of the proposed Settlement Agreement. See, *Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985), *Weinburger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), and *Romstadt v. Apple Computer, Inc.*, 948 F.Supp. 701, 706 (N.D. Ohio 1996).

## IV.   CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court preliminarily determine that the settlement is fair, reasonable, and adequate, and issue an Order of Preliminary Approval in the form of Exhibit H to the Settlement Agreement.

Respectfully submitted,

KLIMIST, McKNIGHT, SALE, McCLOW
  & CANZANO

By: s/*Roger J. McClow*
    Roger J. McClow (P27170)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034-8460
(248) 354-9650
rmcclow@kmsmc.com

KIENBAUM OPPERWALL HARDY
  & PELTON, P.L.C.

By: s/*William B. Forrest III*
    Thomas G. Kienbaum (P15945)
    William B. Forrest III (P60311)
Attorneys for Defendant El Paso
280 North Old Woodward, Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@kohp.com

Dated:  August 12, 2011

157555_3.doc

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS YOLTON, WILBUR MONTGOMERY,
ELSIE TEAS, ROBERT BETKER, MARY
MAYNARD, and GARY HALSTEAD, on behalf
of themselves and a similarly situated class,

                    Plaintiffs,

v.

EL PASO TENNESSEE PIPELINE CO., and
CNH AMERICA, LLC,

                    Defendants.

_____/

Case No. 02-CV-75164

Hon. Patrick J. Duggan
Magistrate Judge Donald Scheer

### CERTIFICATE OF SERVICE

        I hereby certify that on August 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Roger J. McClow, Norman C. Ankers, Bobby R. Burchfield, Douglas G. Edelschick, and Michael B. Nicholson and I hereby certify that I have mailed by United States Postal Service the foregoing document to the following non-ECF participants:

        Stephanie Goldstein
        FRIED, FRANK, HARRIS, SHRIVER
        & JACOBSON LLP
        One New York Plaza
        New York, NY 10004

                          *s/William B. Forrest III*_____
                          280 North Old Woodward Avenue
                          Suite 400
                          Birmingham, Michigan 48009
                          (248) 645-0000
                          Email:  tkienbaum@kohp.com
                          (P60311)

157555_3.doc